## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CARL WALLACE, On Behalf**
**of Himself and All Others Similarly Situated,**

      **Plaintiff,**

**v**
                                       **Case NO. 2:13-cv-10427**

                                           **Hon. ROBERT H. CLELAND**

**DIVERSIFIED CONSULTANTS, INC**


      **Defendant.**

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON PLEADINGS

Defendant Diversified created a dunning letter that is purposely written to back-date the mandates of Federal law and re-write § 1692g(a)(3) and confuse Michigan consumers as to the when their min-Miranda rights begin and end. The attached Brief will go into great detail as to how Plaintiff has stated a claim against Defendant and that Congress purposely created the 30 day language as a forwarding -looking event with the use of the word "after."

Appropriately, Plaintiff requests that this Court deny Defendant's Motion to Dismiss and further allow Plaintiff to amend the complaint to Michigan's version of the FDCPA under the Michigan Occupational Code. (MOC). MCL � 339.901 et seq.

                         Respectfully submitted,

                         THE LAW OFFICES OF BRIAN P. PARKER
                         s/ Brian P. Parker
                         BRIAN P. PARKER (P48617)
                         Attorney for Plaintiff

Dated: July 28, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL WALLACE, On Behalf
of Himself and All Others Similarly Situated,

     Plaintiff,

v                                        Case NO. 2:13-cv-10427

                                       Hon. ROBERT H. CLELAND

DIVERSIFIED CONSULTANTS, INC

     Defendant.

_____/

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON PLEADINGS

### I.    INTRODUCTION

Defendant Diversified is violating the Fair Debt Collection Practices Act by sending out dunning letters that are purposely written to back date the mandatory 30 day dispute time and have the debt validated before its time.

By converting the statutory word "after" to the word "of," Diversified has created an ambiguous math problem for the least sophisticated consumer who must now try to figure when her 30 days begins and ends. The 30 day language was created as a forwarding-looking event with the use of the word "after." The words "after" and "of," are two words that have opposite meanings. Webster's Dictionary reveals that "of" and "after" are antonyms or opposites. Diversified seeks to back-date a dispute mechanism contrary to what Congress intended.

Diversified's use of the word "of" creates an ambiguous and deceptive cannibalization of a statute language that does not require a change. The least sophisticated consumer now has to battle with different interpretations of when the 30 days starts and ends. She faces an ambiguous timeline of when to dispute the debt.

Plaintiff's Complaint properly brings this cause of action to correct this statute change and grant Michigan consumers their full dispute rights under the FDCPA. Defendant Diversified seeks to have the claims dismissed without Diversified showing any legal reason it may circumvent the mandate of the legislature.

## II.    STATEMENT OF FACTS

Under the FDCPA, debt collectors must first communicate with a debtor through a dunning message or letter that explains the debtors right to dispute and/or validate the debt. This notice is commonly called the "mini Miranda" rule and was mandated by Congress to protect consumers from "abusive, deceptive, and unfair debt collection practices" including being forced to pay debts the collector has no proof the debtor owes. To protect against these abuses and arm the debtor from abusive or deceptive debt collection, The FDCPA gives the consumer a 30 day window to dispute the debt or seek proof from the debt collector that it has the legal right to collect the debt.

Defendant Diversified first communicated with Plaintiff and the class members through a form letter that it uses nationwide. **Please see Exhibit 1**. The letter sent to the Michigan class states:

Dear:

This Notice is to inform you that your account with AT&T MOBILITY PRE-GLV 401050 has been referred to our office for collections. Please contact our office to discuss this very important matter

Unless you notify this office within 30 days *of* receiving this notice that you dispute the validity of this debt or other portion thereof, *this office* will assume this debt to be valid.  If you notify this office in writing within 30 days from receiving this notice, *this office* will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request *this office* in writing within 30 days after receiving this notice, this office will provide you the name and address of the original creditor if different from the current creditor. This is an attempt to collect a debt. Any and all information obtained will be used for that purpose. This communication is from a debt collector. (emphasis added)

Sincerely,

Diversified Consultants, Inc **Please see attached Exhibit No. 1**.

A debt collector is required by §1692g to inform a consumer that she has 30 days to dispute the validity. Diversified's letter is crafted to back date the consumer's right to dispute the debt by shortening the required 30 days under 15 U.S.C. § 1692(g) and speeding up the time the debt collector can "assume this debt to be valid."

By eliminating a clear start date, Diversified is, in effect, curtailing the Michigan class member's rights by reducing the number of days they have to dispute the debt verbally or through the mail. The use of the word "of" instead of the mandate at § 1692g, "shortens the debtor's period of reflection and leaves the debtor uncertain as to just when — given the vagaries of the mails — she must, to be safe, send out a notice of dispute."

The uncertainty of the changed language also forces the debtor to shorten the timing of the dispute to get the notice to Diversified within the 30 days instead of *after* receipt as Congress mandated.  This is a form of back-dating that is a violation of the FDCPA. There is no benefit to the consumer with this language change. The consumer loses a Federal right and Diversified benefits by not having to wait the whole thirty days for the consumer to dispute and slow down the collection of the debt.

## III.   STANDARD OF REVIEW

Plaintiff would rely upon Defendant's Standard of Review.

### IV.    ARGUMENT

**a. The FDCPA Statue is clear that a consumer has 30 days after receiving the validation notice to dispute or seek verification.**

Congress enacted the Fair Debt Collection Practices Act (FDCPA) to eliminate "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). "When interpreting the FDCPA, we begin with the language of the statute itself." *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999). ***FDCPA also requires debt collectors to notify debtors about their ability to challenge the validity of a debt and to provide other basic information.*** Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq. *Foti v. NCO Financial Systems, Inc.* 424 F.Supp.2d 643 S.D.N.Y.,2006.

As this court has noted, the FDCPA is "extraordinarily broad," and crafted in response to what Congress perceived to be a widespread problem. *Frey v. Gangwish*,970 F.2d 1516, 1521 (6th Cir. 1992). Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v.Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir. 2008) (quotation marks and citations omitted).

The FDCPA offers a mandatory guide to offer the required dispute notice to consumers:

**(a) Notice of debt; contents**
Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

**(1)** the amount of the debt;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, within thirty days *after* receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid *by the debt collector*;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, *the debt collector* will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer *by the debt collector*; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 USC § 1692g - Validation of debts emphasis added to "after" and debt collector to show what is missing in the letter from Diversified

In order to comply with § 1692g(a), a debt collector "must 'effectively convey' the notice to the debtor." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999). Section 1692g(a)(3) requires the validation notice to state that the debtor may dispute the debt "within thirty days *after receipt of the notice*" (emphasis added). Diversified's letter does not effectively convey the proper notice to Michigan consumers. On the contrary, it is crafted to eviscerate the consumer's right to dispute the debt by shortening the required 30 days and speeding up the time the debt collector can "assume this debt to be valid."

The change of "after" with its antonym, "of" eliminates a clear start date for the 30 days, thus curtailing the class member's rights by reducing both the number of days to dispute the debt and also when the 30 days actually ends. This is another form of back-dating and contrary to the forward-event mandates of Congress. By ignoring the statute, Diversified benefits by decreasing the amount of time to it has to wait to assume the debt to be valid and speed up collection of the debt.

**b. There are very few cases focusing on this particular issue under the FDCPA**

*Jacobson v. Healthcare Financial Services, Inc.,* 516 F.3d 85, 93 (2d Cir. 2008) specifically requires the validation notice to state that the debtor may dispute the debt "within thirty days *after receipt of the notice"* (emphasis added by the Jacobson court here*)*. **Please see the Jacobson case at Exhibit 2.**

*Chauncey v. JDR Recovery Corp.,*118 F.3d 516, 519 (7th Cir.1997) held "if we were to hold that the validation request must be received by the thirtieth day, we would be rewriting Section 1692g, which we are not entitled to do." **Please see Exhibit 3.**

In *Jacobson*, the debtor received a dunning letter from HFS demanding payment within 30 days or to otherwise notice the collector, HFS of a dispute. The Plaintiff filed a class action suit in the U.S. District Court for the Eastern District of New York, alleging various violations of the Fair Debt Collections Practices Act based upon the language of the letter. Jacobson claimed that HFS violated the FDCPA by 'divesting the consumer of his rights to dispute the debt for thirty days after receipt of the collection letter. HFS filed for dismissal and the District Court granted summary judgment to HFS.

On appeal and as a matter of first impression in the Second Circuit, the Court agreed with the Seventh Circuit and held "Section 1692g(a)(3) requires the validation notice to state that the debtor may dispute the debt "within thirty days *after receipt of the notice*" (emphasis added). *Jacobson at 93.* The aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options. It is also to make the rights and obligations of a potentially hapless debtor as pellucid (clear, easily understood) as possible. Given these goals, we cannot adopt a construction of the Act that would not only shorten the debtor's period of reflection, but also leave that debtor uncertain as to just when – given the vagaries of the mails – she must, to be safe, send out a notice of dispute. *Jacobson at 95.*

The *Jacobson* Court found that the least sophisticated consumer (same standard as the 6th Circuit) would be confused by the HFS letter because the demand notice required that the consumer either make payment or dispute the debt before the 30-day dispute period ran. In ruling against HFS for violating the statue, the Second Circuit focused on the end date of the period.

### c.   Congress use of the word "after" is no accident

Congress creates numerous statutory provisions while recognizing the use of the word "after" to provide a recipient the full amount of statutory time limits.

FRCP 12 states for example,

(a) TIME TO SERVE A RESPONSIVE PLEADING.

(1) *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

(A) A defendant must serve an answer:

(i) within 21 days ***after*** being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d), within 60 days *after* the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

(B) A party must serve an answer to a counterclaim or crossclaim within 21 days ***after*** being served with the pleading that states the counterclaim or crossclaim.

(C) A party must serve a reply to an answer within 21 days ***after*** being served with an order to reply, unless the order specifies a different time.

A look at the commentary under Rule 26(a)(5) talks about what "next day" means. In the comments, it states:

*Subdivision (a)(5).* New subdivision (a)(5) defines the "next" day for purposes of subdivisions (a)(1)(C) and (a)(2)(C). The Federal Rules of Appellate Procedure contain both forward-looking time periods and backward-looking time periods. A forward-looking time period requires something to be done within a period of time *after* an event. See, e.g., Rule 4(a)(1)(A) (subject to certain exceptions, notice of appeal in a civil case must be filed "within 30 days after the judgment or order appealed from is entered").

Basically, the federal court rules equate "next day" to time periods stating something happens *after* an event.

There is a Federal mandate to grant a recipient the full statutory time.  FRCP 6 for example, states:

(a) COMPUTING TIME. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.

(1) *Period Stated in Days or a Longer Unit.* When the period is stated in days or a longer unit of time:

(A) *exclude the day of the event that triggers the period*;

In fact, the Summons on this lawsuit codifies the congressional rule on the full amount of days allotted for forward action. The Summons in this case states that "Within 21 days *after* service of this summons on you (not counting the day you received it)" showing the legislative desire that a time limit is to be honored and not shortened. **Please see Exhibit 4**.

As with most Congressional mandates, the 30 days time limit under the FDCPA is a forward-looking event. Substituting the word "after" with "of" in the above statutes would create an ambiguous nightmare for Plaintiffs and Defendants alike. Diversified has created ambiguity and uncertainty in the notice provision for Plaintiff and the class members in cannibalizing the forward-looking wishes of Congress and back-dating the time to dispute.

### d.  The opposite of the word "after" is "of."

In the Sixth Circuit, when interpreting the FDCPA, we begin with the language of the statute itself. *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999). Here, The Statue section reads:

(3) a statement that unless the consumer, within thirty days *after* receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

In creating the dunning letter with an improper notice time limit, Defendant uses a word directly opposite to the word that Congress requires. There does not appear to be a good reason to do this other than to benefit the debt collector and back-date the mini-Miranda rule.

Similar to the forward looking use of "AFTER" by Congress, according to Webster's dictionary, the Definition of the word *"AFTER" means* " following in time or place" http://www.merriam-webster.com/dictionary/after.

**Definition of AFTER**

: following in time or place : <u>AFTERWARD</u>, <u>BEHIND</u>, <u>LATER</u> <we arrived shortly *after*> <returned 20 years *after*>

**Examples of AFTER**

1. Don't tell them until *after*.
2. I expected her then, but she arrived the week *after*.
3. He ate lunch and left just *after*.

Under the FDCPA, a Michigan consumer has thirty days "after" they receive the letter, or thirty days following the receipt of the letter. Diversified's letter changes this to benefit the debt collector. Its wording states, "Unless you dispute the validity of this debt, or any portion thereof within thirty (30) days *of* receipt of this letter, we will assume that the debt is valid."

Under Webster's dictionary, the Definition of the word *"OF"* means "used as a function word to indicate a point of reckoning, "north *of* the lake." The Webster's definition of "of" states that:

"OF", meaning numerous things used in ways such as the third of July, this means belonging to July. But when Diversified says in its letter "thirty days of receipt," this indicates the position in time of an action or occurrence. Meaning either earlier than, before receipt or until receipt. http://www.merriam-webster.com/dictionary/of.

**Definition of OF**

**1**

—used as a function word to indicate a point of reckoning<north *of* the lake>

**2**

**a** —used as a function word to indicate origin or derivation <a man *of* noble birth>

**b** —used as a function word to indicate the cause, motive, or reason <died *of* flu>

**c :** BY <plays *of* Shakespeare>

**d :** on the part of <very kind *of* you>

**e :** occurring in <a fish *of* the western Atlantic>

**3**

—used as a function word to indicate the component material, parts, or elements or the contents <throne *of* gold><cup *of* water>

**4**

**a** —used as a function word to indicate the whole that includes the part denoted by the preceding word <most *of* the army>

**b** —used as a function word to indicate a whole or quantity from which a part is removed or expended <gave *of* his time>

**5**

**a :** relating to : ABOUT <stories *of* her travels>

**b :** in respect to <slow *of* speech>

**6**

**a** —used as a function word to indicate belonging or a possessive relationship <king *of* England>

Webster also reveals that "of" and "after" are antonyms. Antonyms mean opposites, not alike, etc. **Please see Exhibit 5**. The opposite of "after" which 15 USC § 1692g(a)(3) requires, is "of" which is used in Diversified's letter at **Exhibit 1** with no use other than to confuse the consumer and shorten the time limits. There is no good intent in swaying from the statute given how it blurs the time lines in a way that only favors Diversified.

The least sophisticated consumer now has to battle with different interpretations of when the 30 days starts and ends. She faces an ambiguous timeline of when to dispute the debt.

By specifying that the debt must be disputed **within thirty days from** the date of **receipt** of the **notice**, Congress has consciously protected against abusive tactics of debt collectors, such as the backdating of notices or other practices that might shorten debtors' time to respond. *See Cavallaro v. Law Office of Shapiro & Kreisman,* 933 F. Supp. 1148, 1154 (E.D.N.Y. 1996). **Please see Exhibit 6**.

A collection letter is deceptive when "it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Caprio v. Healthcare Revenue Recovery Group, LLC,* 2013 WL 765169 (3rd Cir. 2013) citing *Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)).* In applying the "least sophisticated consumer" standard, the Sixth Circuit has adopted the "more than one reasonable interpretation standard." *Kistner,* 518 F.3d at 441. Under that approach, a collection letter can be "deceptive" if it is open to "more than one reasonable interpretation, at least one of which is inaccurate." Id. (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993)). Here, at least one interpretation of the Diversified letter leaves the least sophisticated consumer confused as to when the 30 days starts or ends.

     e. **Defendant wrongfully focuses on the back-dating case of** *Stojanovski* **to ignore how big of a change to the statute is made by eliminating the word "after"**

This Court should ignore the outdated holding in *Stojanovski* that Defendant relies upon in its Brief. *Stojanovski* is a back-dating case. As the Court should here with Diversified, *Philip v. Sardo & Batista, P.C.,* Civil Action No. 11-4773 16 (SRC), 2011 U.S. Dist. LEXIS 130267 held "The letter at issue here unlawfully creates confusion as to what date would trigger the thirty day period since the unsophisticated, or even the sophisticated consumer may wonder

whether a response is required within thirty days of the date of the collection letter (February 3, 2011); or as § 1692g(a)(3) specifically provides "within thirty days after receipt of the notice." *Philip at Page Six of the Opinion at* **Exhibit 7**.

*Philip* cites *Stojanovski* as Diversified does in its Brief. However, the *Philip* Court recognizes how violative the *Stojanovski* holding is of the FDCPA holding against the Defendant's failure to eliminate the word "after. The *Philip* Court held "In support of this argument, Defendant cites to *Stojanovski v. Strobel & Manoogian P.C.*, where the court held that the notice limiting the period to dispute the debt from the date of notice rather than from the date of receipt was de minimis and did not amount to a violation of § 1692g(a)(3). *Stojanovski v. Strobel & Manoogian P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992). This Court declines to follow the holding in *Stojanovski*. By specifying that the debt must be disputed within thirty days from the date of receipt of the notice. Congress has consciously protected against abusive tactics of debt collectors, such as the backdating of notices or other practices that might shorten debtors' time to respond. *See Cavallaro at* 1148.

Interestingly, similar to the Defendant in *Philip*, Diversified eliminates referring to itself as a debt collector instead, listing itself as "this office." The Statue section reads:

**(3)** a statement that unless the consumer, within thirty days *after* receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid *by the debt collector*;

The use of "of" by Diversified makes no sense as a means to fulfill Congress's mandate that the debtor be given the full 30 days. As stated earlier, Webster reveals that "of" and "after" are antonyms. Antonyms mean opposites, not alike, etc. The opposite of "after" which 15 USC § 1692g(a)(3) requires, is "of" which is in Diversified's letter at **Exhibit 1**. *Cavallaro v. The Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148, 1154 (E.D.N.Y. 1996) holds that " a

validation notice that " stated that Plaintiff should dispute the debt 'within thirty (30) days from the date of this notice' rather than, as mandatorily required by the statute, within 30 days of receipt of the notice" violated the statute." *Cavallaro,* 933 F.Supp. at 1154 (emphasis supplied).

Diversified's letter and illegal framing of the FDCPA is exactly the same as the *Jacobson* letter the court found violative of the FDCPA which explicitly required either payment, or a notice of dispute, to be *"received in HFS's office"* within thirty days.

Had the Diversified letter followed the FDCPA and properly framed the 30 day requirement, it should have required that that the *mailing* of the dispute or payment be within 30 days, not that the dispute or payment *be received* within 30 days. This is why Congress placed the word "after" as part of the mandatory validation notice requirements of the FDCPA.

f.   The use of the words "of" as opposed to "after is not the only issue here

The Sixth Circuit has held that, under the Act, notice of the thirty-day validation period is necessary, but not sufficient to satisfy § 1692g(a). However, a debt collector must "effectively convey" the notice to the debtor. *Smith v. Computer Credit Inc* 167 F3d 1052, 1054 (6th Cir. 1999).

To be valid, a debt validation notice must be effective, and it cannot be cleverly couched in such a way as to eviscerate its message. *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996). The notice required by §1692g must tell the target that she has 30 days to dispute the validity not that they have thirty days to get it to the debt collector. In *Chauncey v. JDR Recovery Corp.,*118 F.3d 516, 519 (7th Cir.1997) the Court held that a demand for payment "within thirty days" violates Section 1692g of the FDCPA.   *Chauncey* held "if we were to hold that the validation request must be received by the thirtieth day, we would be rewriting Section 1692g, which we are not entitled to do." **Please see Exhibit 3**. The *Jacobson* Court focused on the overshadowing and

contradiction of the two time requirements to make a point regarding the "after" language. The Court specifically held, Section 1692g(a)(3) requires the validation notice to state that the debtor may dispute the debt "within thirty days *after receipt of the notice" (emphasis added by the Jacobson court here).*

*Chauncey* also held that "[i]f we were to hold that the validation request must be received by the thirtieth day, we would be rewriting Section 1692g, which we are not entitled to do." And Jacobson quoted *Swift* to bring the point home in stating, "[T]he notice states that payment must be received within the thirty day limit. Even the least-sophisticated consumer would calculate that payment must be mailed in advance of a deadline in order to be received by that deadline."

### g. A Plain Reading of the Statute Favors Plaintiff

A statute need not contain parallel language in all of its subsections in order to be internally consistent. Rather, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (internal citation and quotation marks omitted); see also *Andreiu v. Ashcroft*, 253 F.3d 477, 480 (9th Cir.2001) (en banc). Congress intended to impose the word "after" in § 1692g(a)(3), as a placeholder for subsequent subsections § 1692g(a)(4), (5). Without a starting point that "after" brings in § 1692g(a)(3), there would be no starting point for the "within the 30 days period" in § 1692g(a)(4), (5). Under the "of" interpretation of Diversified, there is no starting point for any of those subsections and the 30 days the consumer gets to validate the debt.

### h. The Diversified letter is false and deceptive.

§ 1692e(10) specifically prohibits "[t]he use of any false representation or deceptive

means to collect or attempt to collect any debt or to obtain information concerning a consumer." Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). As detailed above, Defendant replaced the statutory language with a statement that debtors must challenge the debt within thirty days of receipt of the letter and not 30 days *after* receipt of the notice.

Diversified is, in effect, curtailing the Michigan class member's rights by reducing the number of days they have to dispute the debt. In further avoiding Congressional mandate, Diversified has changed the language identifying the debt collect to "this office."

With Diversified's language change, when the 30 days starts or ends is now ambiguous. The consumer now faces a math problem figuring when the dispute must be sent. Given that the FDCPA statute is clear and that hundreds of other debt collectors are able to follow the law and industry standard in creating the validation notice (**Exhibit 8**), Diversified's crafting of this letter is no accident. This is purposely written to prevent consumers being able to exercise their rights under the FDCPA and miss their dispute deadline. With the deadline miss, the debt then becomes valid in a shorter amount of time than mandated by Federal law to the benefit of only Defendant.

### i. Applying the Least Sophisticated Debtor Standard to the Diversified letter is a question of fact under § 1692e

The Sixth Circuit relies upon the use of the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6thCir. 2008) (quotation marks and citations omitted). Nonetheless, the standard "also prevents liability for bizarre or idiot syncratic interpretations of

collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."  *Id.* at 438-39

In applying the "least sophisticated consumer" standard, the Sixth Circuit has adopted the "more than one reasonable interpretation standard." *Kistner*, 518 F.3d at 441. Under that approach, a collection letter can be "deceptive" if it is open to "more than one reasonable interpretation, at least one of which is inaccurate." Id. (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). "[T]he 'more than one reasonable interpretation' standard is applicable to the entirety of § 1692e as a useful tool in analyzing the least sophisticated consumer test." Id.

Therefore, where a letter could be susceptible to more than one reasonable interpretation and one of these interpretations is inaccurate, there is a question of fact for the jury to decide. Id. (reversing district court's grant of summary judgment to defendant, because "[a] genuine issue of material fact exists as to whether one can reasonably conclude, under the 'least sophisticated consumer' test, that the collection letter addressed to *Kistner* is susceptible to a belief that it is from an attorney.").

Without question, by converting the Congressional "after" to "of," Diversified has created an ambiguous, math problem for the least sophisticated consumer and a question of fact as to when the time limits start and end.  The use of the word "after" creates no such uncertainty as does the Diversified's loose language.   The language adds to the workload of figuring out how and when to dispute the debt. Given the opposite definitions of the word "of" versus "after" and the fact that they are antonyms, there is no benefit in this language change to anyone here but Diversified and clear question of fact arises.

**j.  MCPA mirror the allegations under the FDCPA**

The Michigan Collection Practices Act (MCPA), MCL 445.251 et seq. covers the same abuses and actions as in the Michigan Occupational Code. (MOC). MCL � 339.901 et seq. However, the MCPA applies to businesses and actors not normally covered under the FDCPA. The MOC mirrors the Federal Act (FDCPA). Plaintiff would seek permission of the court to amend the complaint to apply the MOC under these same facts by stating:

a. Defendant violated M.C.L. 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt using **Exhibit 1** as mentioned above;

b. Defendant violated M.C.L. 339.915(a) communicating with a debtor in a misleading or deceptive manner using **Exhibit 1** as mentioned above.

c. Counter Defendant has violated MCL 339.915(f) Misrepresenting in a communication with a debtor any of the following:

(ii)    The legal rights of the creditor of debtor at **<u>Exhibit 1</u>**.

By presenting the improper writing and mangling of the consumers rights under Federal Law, Diversified has violated the Michigan collection statutes with an inaccurate and misleading statement designed to confuse the reader while seeking a debt from the Michigan Class.

## <u>CONCLUSION</u>

Plaintiff has more than met his burden in overcoming this motion and providing proof of pleadings and documentation that Defendants violated the law with a communication letter that was false, deceptive, and misleading under 15 U.S.C. §1692e. Diversified is purposely back-dating its collection letter.

In *Kistner*, the Court concluded that there was a fact issue as to whether the letter in question was deceptive and misleading given that there were factors that cut both

ways. Therefore, where a letter like Diversified's could be susceptible to more than one reasonable interpretation and one of these interpretations is inaccurate, there is a question of fact for the jury to decide. Id.

Though there is no 6th Circuit case on point regarding the use of "after" versus "of," the *Jacobson* case is factually on point and instructive as it centered on the same issue as the Diversified letter. Federal law mandates that the consumer receive her full 30 days and she should not have to lose at least a day if they follow the wrongful instructions of the Diversified letter. The *Jacobson* and *Chauncey* Court specifically held, Section 1692g(a)(3) requires the validation notice to state that the debtor may dispute the debt "within thirty days *after receipt of the notice" (emphasis added by the Jacobson court here)*.

*Chauncey* also held that "[i]f we were to hold that the validation request must be received by the thirtieth day, we would be rewriting Section 1692g, which we are not entitled to do." And *Jacobson* quoted *Swift* to bring the point home in stating, "[T]he notice states that payment must be received within the thirty day limit. Even the least-sophisticated consumer would calculate that payment must be would calculate that payment must be mailed in advance of a deadline in order to be received by that deadline."

By converting the statutory word "after" to the word "of," Diversified has created an ambiguous, math problem for the least sophisticated consumer who must now try to figure when her 30 days begins and ends.  The words "after" and "of," are two words that have opposite meanings. Only Diversified benefits with the use of the change with a dispute mechanism that contrary the forward looking event Congress intended.

Diversified is seeking to back-date the response time of the consumer's dispute. The least sophisticated consumer now has to battle with different interpretations of when the 30 days starts and ends.

Congress intended to impose the word "after" in § 1692g(a)(3), as a placeholder for subsequent subsections § 1692g(a)(4), (5). Without a starting point that "after" brings in § 1692g(a)(3), there would be no starting point for the "within the 30 days period" in § 1692g(a)(4), (5). Under the "of" interpretation of Diversified, there is no starting point for any of those subsections and the 30 days the consumer gets to validate the debt.

WHEREFORE, Defendant Diversified created a letter that is purposely written to back-date the mandates of Federal law and it is Defendant's intent to re-write § 1692g(a)(3) and confuse Michigan consumers as to the when their min-Miranda rights begin and end.

Appropriately, Plaintiff requests that this Court deny Defendant's Motion to Dismiss and allow Plaintiff to amend the complaint to Michigan's version of the FDCPA under the Michigan Occupational Code. (MOC). MCL � 339.901 et seq.

Respectfully submitted,

THE LAW OFFICES OF BRIAN P. PARKER

s/ Brian P. Parker
BRIAN P. PARKER (P48617)
Attorney for Plaintiff
30600 Telegraph Rd., Suite 1350
Bingham Farms, MI 48025
DATED: July 28, 2013          (248) 642-6268

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**CARL WALLACE, On Behalf**
**of Himself and All Others Similarly Situated,**

     **Plaintiff,**

**v**

                                          **Case NO. 2:13-cv-10427**

**DIVERSIFIED CONSULTANTS, INC**          **Hon. ROBERT H. CLELAND**

     **Defendant.**

                                                                           /

## <u>PROOF OF SERVICE</u>

I HEREBY CERTIFY that on July 29, 2013 I e-filed Motion, Brief in Support of Plaintiff's

Response to Defendant Diversified Consultant's Motion For Judgment On Pleadings along with

this Proof of Service with the United States District Court Eastern District of Michigan Southern

Division.

Dated: July 29, 2013

                                                 /s/Stacey Lockwood
                                                 Stacey Lockwood